733 P.2d 705

Helen H. KELLER, individually and as Personal Representative of the Estate of Ernest L. Keller, Plaintiff-Respondent,

v.

Kenneth D. ROGSTAD, a single man, and Anna Louise Vendramin, Personal Representative of the Estate of Oscar A. Rogstad, deceased, Defendants,

Kenneth D. ROGSTAD, Cross-Plaintiff and Appellant,

v.

Anna Louise VENDRAMIN, as Personal Representative of the Estate of Oscar A. Rogstad, Cross-Defendant and Respondent.

Anna Louise VENDRAMIN, Personal Representative of the Estate of Oscar A. Rogstad, Plaintiff-Respondent,

v.

Kenneth D. ROGSTAD and Doryne Rogstad, husband and wife, individually and as Trustees of Property for the Use and Benefit of Oscar A. Rogstad, Defendants-Appellants.

No. 16383.

Supreme Court of Idaho.

Feb. 12, 1987.

Everett D. Hofmeister, Esq., Coeur d'Alene, for defendants-appellants, Rogstads.

Thomas E. Cooke, Priest River, for plaintiff-respondent Keller.

James F. Judd, and Linda Judd, Post Falls, for plaintiff-respondent Vendramin.

DONALDSON, Justice.

This appeal requires us to review the district court's decision quieting title to certain real property in Helen Keller, and in finding Kenneth and Doryne Rogstad to be trustees of an express trust created by Oscar Rogstad, decedent, for the use and benefit of himself; and, therefore, accountable to Oscar's estate for certain real property and any proceeds from the sale of such property received and retained by them. In particular, we must decide three issues: (1) whether the March 19, 1970 warranty deed from Oscar to Kenneth was void; (2) whether Kenneth was estopped from relying on the April 21, 1972 quitclaim deed from Oscar to Kenneth; and (3) whether Kenneth and his wife Doryne were trustees of certain real property for the benefit of Oscar and, therefore accountable to the estate for the property and any proceeds received therefrom.

This appeal arises from a consolidation of two separate actions. The first was an action by Anna Louise Venderamin, Personal Representative of the Estate of Os-

car Rogstad, deceased, filed against Kenneth and Doryne Rogstad, seeking a determination that Kenneth and Doryne were trustees of certain real properties and for an accounting of the proceeds generated by the sale of said real properties. The properties were conveyed to Kenneth by Oscar Rogstad during his lifetime. The second action was filed by Helen Keller (Helen) against the estate and Kenneth Rogstad seeking to quiet title to certain real property conveyed by Oscar to Helen. Kenneth counterclaimed against both the estate and Helen asserting that Kenneth owned the real properties and proceeds individually. Subsequently, the district court ruled against Kenneth Rogstad on both actions and this appeal followed.

Initially, it should be noted that Helen Keller was formerly Helen Rogstad, the wife of Oscar Rogstad. Additionally, Anna Louise Vendramin and Kenneth Rogstad are the children of Oscar Rogstad from a previous marriage.

The following is a summary of stipulated facts pertinent to this case. Oscar and Helen Rogstad were married on December 28, 1967. At the time of their marriage, Oscar was living alone on the property in question. Following the marriage they took up residence on the property, and acting jointly made a series of improvements to the dwelling house and outbuildings situated thereon, which improvements were made by the joint labors of both, during their marriage, and were financed by the separate property of Oscar and the community property of Oscar and Helen. On December 6, 1968, Oscar executed a warranty deed granting to Helen a one-half interest in the property because he was concerned that should he pass away that his children would deprive Helen of any interest in his property. That same day Oscar and Helen executed a Joint Last Will and Testament, wherein each left to the other, all of their property. Following execution of the deed, the property involved was treated as community property by both Oscar and Helen, and three parcels of it were subsequently sold, with both Oscar and Helen signing the instruments of sale and conveyance.

Oscar and Helen subsequently separated during the month of April 1969. Following that separation, Oscar executed a warranty deed to his son, Kenneth, reserving a life estate for the use, benefits and profits of the property for his life.

Oscar and Helen thereafter reconciled. On February 4, 1970, Kenneth re-deeded the property in its entirety back to Oscar. However, on March 19, 1970, Oscar executed a warranty deed back to Kenneth reserving a life estate in the property for his use, benefits and profits.

On November 9, 1971, Helen filed for divorce. Oscar and Helen negotiated their own property settlement including a division of the property which Oscar and Kenneth had been deeding back and forth to each other.

On January 17, 1972, Helen and Oscar each executed quitclaim deeds dividing the property between themselves. Certain other portions of the property, the parties elected to leave in common ownership between the two of them certain other portions of the property. Oscar, however, failed to disclose to Helen the fact that he previously executed the deed of the property to his son Kenneth.

On April 21, 1972, Oscar executed a quitclaim deed of his sole and separate property to Kenneth, including the property Oscar had just quitclaimed to Helen. Thereafter, on July 26, 1972, Oscar, Kenneth and Doryne Rogstad filed a quiet title action against Helen. The complaint alleged that Kenneth and Doryne were the owners in fee subject to Oscar's life estate of the portion of the property which included the parcel which Helen had quitclaimed to Oscar as part of the property settlement agreement. However, the quitclaim deed dated April 21, 1972, which Oscar had granted Kenneth his entire interest to the property, was not presented to the court, nor considered by the court in the quiet title action.

On November 16, 1973, Judge Dar Cogswell entered judgment in Bonner County Case No. 11971 wherein he ordered, adjudged and decreed that title to the por-

tions of the property which Oscar and Helen had quitclaimed to each other in a property settlement be awarded to each as their sole and separate property free of any right, title or interest of any other person.

On April 23, 1974, Oscar conveyed to Kenneth in trust for the use and benefit of Oscar Rogstad that portion of the property which the district court had quieted title to Oscar in Bonner County Case No. 11971. Thereafter, on two separate occasions Kenneth Rogstad "as Trustee for the use and benefit of Oscar Rogstad" conveyed by warranty deed to third parties portions of the property to which had been quieted in Oscar in the Bonner County Case No. 11971, and which Oscar had deeded to Kenneth in trust. The proceeds were deposited in Oscar's checking account.

On October 10, 1977 Oscar executed his Last Will and Testament in which he directed that no part, share or interest in his estate should go to his son Kenneth and bequeathed and devised his estate to his daughter Anna Louise Vendramin, whom he also appointed as his personal representative.

On October 13, 1977 Oscar executed and delivered to Ernest L. Keller and Helen L. Keller a quitclaim deed covering a parcel of property which was originally part of the property, but which is not included in the deed of trust to Kenneth. The Kellers paid Oscar $3,000 for the October 13, 1977 deed.

Oscar died on January 28, 1978. February 2, 1978 Anna Louise Vendramin filed a petition for formal probate of Oscar's will and formal appointment of herself as personal representative. The petition was subsequently granted by the magistrate on March 8, 1978.

Subsequent to Oscar Rogstad's death, Kenneth and Doryne individually and not as trustees for Oscar entered into agreements for the sale of the property. Such proceeds from the sales were received and retained by Kenneth and Doryne Rogstad. The foregoing facts lead to the actions being filed against Kenneth Rogstad.

On appeal, Kenneth contends, as he did below, that he is the sole owner in fee simple. His argument rests on the viability and efficacy of two deeds; the March 19, 1970 warranty deed reserving a life estate from Oscar to Kenneth, and the April 21, 1972 quitclaim deed granting all interest from Oscar to Kenneth. Kenneth contends the April 21, 1972 quitclaim deed merged all right, title and interest and fee simple absolute in himself. We will address each deed separately.

■ As for the March 19, 1970 warranty deed, we agree with the district court's determination that it is null and void in that it was a conveyance of community property without Oscar's spouse, Helen, joining in the conveyance. I.C. § 32–912 provides that "neither the husband or wife may sell ... the community real estate unless the other joins in executing and acknowledging the deed...." The failure of a spouse to join in any conveyance renders the conveyance void. *Thomas v. Stevens*, 69 Idaho 100, 105, 203 P.2d 597, 602 (1949).

■ In this case, there is ample evidence supporting the district court's finding that the property had been converted from Oscar's separate property to the community property of Oscar and Helen. The record reflects that: Oscar married Helen on December 8, 1967; that following their marriage, considerable improvements were done upon the property by the joint labors and contributions of Helen and Oscar; that during the fall of 1968, Oscar, fearing his children would deprive Helen of any interest in his property, executed a warranty deed on December 6, 1968, conveying to "Helen Louise Rogstad (my Legal Wife)" a one-half interest in the property; that the December 6, 1968 warranty deed was recorded on April 9, 1969; that same day (April 9, 1969) Oscar and Helen executed a joint last will and testament, wherein each left to the other all property owned by them on the date of their death, including the property; both Oscar and Helen joined together in the conveyance of certain portions of the property to third parties; and the property had previously been found to be the community property of Helen and Oscar in Bonner County Case No. 11971. This being substantial, competent evidence

supporting the finding that the property was intended to be the community property of Oscar and Helen, we refuse to find otherwise. I.R.C.P. 52(a); *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct. App.1983). Therefore, in accordance with I.C. § 32–912, Oscar's conveyance to Kenneth without Helen joining was properly ruled to be void.

■ Kenneth obtained another deed from Oscar. This deed is the April 21, 1972 quitclaim deed purporting to grant all of Oscar's property interest to Kenneth. Again, we agree with the district court's conclusion that Kenneth is estopped by judicial record from asserting the validity of the April 21, 1972 deed. "Under the doctrine of judicial estoppel a party is bound by his judicial declarations and may not contradict them in a subsequent proceeding involving the same issues and parties." *Sailes v. Jones*, 17 Ariz.App. 593, 499 P.2d 721, 726 (1972).

Kenneth asserts that this deed was given to eliminate Oscar's life tenancy that was previously created by the March 19, 1970 deed and, therefore, the April 21, 1972 deed conveyed to him a complete fee ownership of the property. However, this is not the position Kenneth took in a quiet title action less than three months after the execution of the April 21, 1972 deed. The record indicates that Oscar and Kenneth filed a verified quiet title action against Helen in July, 1972. Kenneth alleged in the complaint that he and Doryne were owners in fee, subject to Oscar's life estate. This is the interest created by the March 19, 1970 deed. However, Kenneth did not assert his alleged absolute ownership interest resulting from the then recently executed April 21, 1972 deed. In fact, the record reflects that the April 21, 1972 deed was never presented to the court, nor considered by the court, in the quiet title action. The title to the property in question was subsequently quieted in Oscar.

It is clear Kenneth claims an individual interest in the property by virtue of the April 21, 1972 quitclaim deed from Oscar. Yet, as shown above, he ignored this deed three months after its execution when he filed his quiet title action in Bonner County Case No. 19771, which involved the same property and parties that we have in this case. We will not now permit Kenneth to assert a completely different position and, therefore, we refuse to give effect to the April 21, 1972 quitclaim deed.

■ The only remaining deed then between Oscar and Kenneth is the one executed on April 23, 1974, wherein Oscar conveyed the property in question to Kenneth "in trust, for the use and benefit of Oscar Rogstad." Kenneth testified that this deed was executed because Kenneth took care of Oscar. Kenneth, however, argues that neither he nor Oscar considered him a trustee, and he was to receive the reversionary interest in the trust upon Oscar's death. We find Kenneth's arguments unpersuasive.

"An express trust is created only if the settlor manifests an intention to create a trust. This manifestation of intention requires no particular words or conduct; the settlor simply must evidence his intention, upon transferring the property, or res, to the trustee, that the trustee will hold the res for the benefit of a third person, the beneficiary." *Garner v. Andreasen*, 96 Idaho 306, 308, 527 P.2d 1264, 1266 (1974).

Here, there is substantial and competent evidence supporting the finding of the district court that Oscar intended to create a trust when he conveyed the subject property to Kenneth.

The record indicates that: On April 23, 1974, Oscar conveyed the property to Kenneth "in trust for the use and benefit of Oscar Rogstad"; Kenneth behaved in the manner of a trustee in that he entered into certain conveyances of the trust property as "Trustee." Subsequent to those transactions and pursuant to the related escrow instructions, the proceeds were deposited into Oscar's account; Anna Louise and Leo Vendramin testified that at various times Oscar told them he owned the property, and that he deeded the property to Kenneth as trustee to protect his property. There being substantial, competent evidence supporting the trial court's findings of a trust, we refuse to disturb it. I.R.C.P. 52(a).

Kenneth further contends that even if a trust existed for Oscar's use and benefit, it was only for Oscar's life and upon Oscar's death, the reversionary interest went to Kenneth in consideration for his having taken care of Oscar. We disagree.

Kenneth has failed to produce sufficient evidence in support of his position.

"It is a well-settled principle of equity, based upon the presumed intention of the settlor that a trustee is not to take the beneficial interest in the trust property, that where a settlor transfers property on certain trusts or for certain purposes, and either fails to provide in the trust instrument for the disposal of the entire beneficial interest in the property, or, having made such provision, the trust subsequently fails or does not exhaust the whole of the trust property, equity will imply a resulting trust in favor of the settlor, or if he is dead, his successors in interest."

Trust—Reversion—Settlors Death, 30 A.L.R.3d 1318, 1323 (1975). Uncertainty in the designation of a beneficiary does not thereby pass title of the trust property to the trustee. Therefore, we conclude that the trust property passed to Oscar's estate upon his death by a resulting trust. Thus, as the district court ruled, Kenneth must account to Oscar's estate for all monies received and retained by him from the sale of the property in question. Additionally, title to any portion of the property which has not yet been sold or conveyed, is hereby quieted in fee simple in Oscar's estate, free from any right, title, claim or interest of Kenneth or Doryne Rogstad.

Although our analysis has been directed towards the action between Vendramin and Kenneth, we find that the same theories of law apply in respect to the action between Helen Keller and Kenneth. Mainly, that the deed under which Kenneth lays claim to the property now claimed by Helen is void and, Kenneth is estopped by judicial record from asserting the validity of any such deed against Helen. As a result, the district court properly quieted title in the respective property claimed by Helen Keller.

Both respondents, Helen Keller and Anna Louise Vendramin, have requested an award of attorney fees pursuant to I.C. § 12–121 and I.A.R. 41 on the grounds this appeal was brought frivolously, unreasonably and without foundation.

"Attorney fees are awarded if an appeal does no more than 'simply invite the appellate court on to second-guess the trial court on conflicting evidence,' (citations omitted), or if the law is well-settled and the appellants have made 'no substantial showing that the district court misapplied the law,' (citation omitted)." *Davis v. Gage,* 109 Idaho 1029, 1031, 712 P.2d 730, 732 (Ct.App.1985).

We conclude that these criteria exist in this appeal and, therefore, respondents are entitled to an award of reasonable attorney fees on appeal as determined within I.A.R. 41.

The judgment of the district court is affirmed.

Costs and attorney fees to respondents.

SHEPARD, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.